**In re Richard John ITULE and Sharon Lee Itule, Debtors.**

**Richard John ITULE and Sharon Lee Itule, Appellants/Cross–Appellees,**

v.

**METLEASE, INC., Appellee/Cross–Appellant.**

**BAP Nos. AZ 88–1750 RJP, AZ 88–1797 RJP.**

**Bankruptcy No. B87–02738 PHX RGM. Adv. No. 87–441.**

United States Bankruptcy Appellate Panel of the Ninth Circuit.

Argued and Submitted May 22, 1989.

Decided May 31, 1990.

Terrie L. Thomas, Phoenix, Ariz., for appellants/cross-appellees.

Elizabeth J. Dunn, Phoenix, Ariz., for appellee/cross-appellant.

Before RUSSELL, JONES, and PERRIS, Bankruptcy Judges.

## OPINION

RUSSELL, Bankruptcy Judge.

Creditor brought a complaint to determine a debt nondischargeable pursuant to 11 U.S.C. Sections 523(a)(4) and (a)(6). The bankruptcy court found that Mr. Itule embezzled and willfully and maliciously injured the creditor's property, and determined the debt to be nondischargeable. Mr. Itule appeals this decision. Creditor

cross-appeals the court's denial of its request for attorney's fees. We affirm.

## FACTS

Richard and Sharon Itule (debtors/appellants/cross-appellees)[1] owned a trucking company known as Richard Itule Produce, Inc., d/b/a Richard Itule Trucking Co., Inc. In March of 1985, debtor Richard Itule contacted Metlease, Inc. ("Metlease") (appellee/cross-appellant), and requested that Metlease help him acquire trucks and trailers for his produce trucking business. Metlease operates as a business that provides financing frequently unavailable through banks or other sources. One means of financing provided by Metlease is a lease-purchase agreement. In the typical case, the prospective lessee selects the equipment he wishes to acquire and then informs Metlease of his desire to obtain these items. Metlease subsequently purchases the desired equipment from a supplier or vendor and then leases that equipment to the lessee through a "noncancellable lease" for a specific term. At the end of the term, the lessee has the option of paying a predetermined sum to purchase the equipment.

In the instant case, Itule selected the following trucking equipment from Pioneer Truck Sales in Phoenix, Arizona ("Pioneer"):

Two (2) 1981 Kenworth Trucks

One (1) 1975 Utility Refrigerated Trailer 42′6″

One (1) 1978 Utility Refrigerated Trailer 46′

One (1) 1979 Budd Refrigerated Trailer 42′

Itule then contacted Metlease, which thereafter purchased the vehicles from Pioneer.

On March 6, 1985, the debtors and Metlease entered into five 60–month lease-purchase agreements for the use of the indicated vehicles. The debtors personally guaranteed the agreements and tendered security deposits totalling $9,225.00[2] at the

---

1. For convenience, unless otherwise indicated, all actions attributed to Richard Itule shall be referred to as those of "Itule." All actions attributed to Richard and Sharon Itule will be referred to as those of the "debtors."

2. The security deposits consisted of the following sums: $2,850 for each Kenworth Truck; $850 for the 42′6″ Utility Van; $1,500 for the 46′ Utility Van; and $1,175 for the Budd Van.

time they entered into the lease-purchase agreements.

Under the terms of these agreements, the vehicles were leased "as is" and Metlease made no express or implied warranties regarding the vehicles' condition. The debtors waived all claims against Metlease regarding the equipment, and their only recourse regarding the operation of the equipment was against Pioneer, the supplier. The debtors agreed to maintain the vehicles in good condition, satisfactorily to Metlease, and were solely responsible for all maintenance and repair. They additionally promised to return the equipment in a safe and satisfactory mechanical condition and agreed that they would be liable for the cost if they failed to do so.

When Itule received the vehicles, he signed the Vehicle Acceptance Delivery Receipts indicating that he acknowledged that each "vehicle had been inspected, is operating satisfactorily, and in all respects is as represented" and that he received the vehicles in a safe and satisfactory condition which was acceptable to the debtors.

The debtors' monthly payments on the vehicles totalled $2,277.64,[3] and they made sixteen monthly payments to Metlease, totalling $36,442.24. Thereafter, they failed to make any further payments and defaulted on the lease-purchase contracts. On January 29, 1987, Metlease filed suit against the debtors in Superior Court of Maricopa County, Arizona, for breach of contract. On April 29, 1987, a stipulated judgment was entered whereby the Superior Court ordered that Metlease:

> shall have judgment against Defendants Richard J. Itule Produce, Inc., dba Richard Itule Trucking Co, Inc., Richard Itule and Sharon Itule, in the amount of $100,-860.41, plus attorney's fees in the amount of $243.00 and costs in the amount of $96.75.

The debtors filed their chapter 7 petition on May 11, 1987. On August 17, 1987, Metlease filed a complaint which alleged that debt owed by the debtors was nondis-

chargeable pursuant to 11 U.S.C. Sections 523(a)(4) and (a)(6). Specifically, Metlease alleged that Itule sold parts from the vehicles and converted and retained from proceeds all such sales, and that such improper conduct constituted embezzlement or larceny within the meaning of Section 523(a)(4). Additionally, Metlease alleged that Itule repeatedly and willfully used the vehicles in a manner which caused malicious injury to them within the meaning of Section 523(a)(6).

Metlease's complaint was premised on the physical and operational condition of the vehicles when they were returned by Itule in January 1987. Some of the alleged problems with and damage to the vehicles included the following:

> The four aluminum wheels (two front wheels per truck) were replaced with four steel wheels of lesser quality from the Itule's own trucks.
>
> Each truck was missing one of its respective four fuel tanks. Each truck was missing its radio.
>
> When received by the debtors, the tires on all five vehicles were radial tires in good condition. When the vehicles were returned, all of the tires were retreads or cheaper quality tires which were either bald or in extremely poor condition. Additionally, the wheels on the vehicles were mismatched and had been switched with those on the truck owned by Itule.
>
> One trailer had a large hole in the floor. Another trailer had a warped, uneven floor. The refrigeration units failed to operate on all of the trailers, and trailer doors did not close or seal properly. Reflectors had been removed from the sides of the trucks and trailers.

Metlease had purchased the vehicles for the sum of $92,250 in March, 1985. In 1987, Metlease sold all five vehicles to Ron Griffen of Statewide Tractor/Trailer Brokers for the sum of only $38,500. Because the vehicles were not roadworthy, and because the cost to make them roadworthy was prohibitively expensive, Griffen there-

---

**3.** The monthly payments consisted of the following sums per month: $682.20 for each Kenworth Truck; $277.05 for the 42′6″ Utility Van; $384.78 for the 46′ Utility Van; and $301.41 for the Budd Van.

after sold these vehicles to purchasers in Mexico, where trucking standards are less stringent.

The dischargeability trial was held on May 27, 1988. In its opinion and order, entered on June 28, 1988, the bankruptcy court found that Itule's conduct in dealing with the leased vehicles amounted to "a conversion under the provisions of Sections 523(a)(4) and (a)(6)." Specifically, the court found that Itule "intentionally, willfully and maliciously inflicted damage upon the leased property substantially reducing the value" and that Metlease's "damages were caused by the reckless disregard the debtor [Itule] showed for the value of the leased property by intentionally destroying the intrinsic value thereof." The court found that Metlease suffered nondischargeable damages of $53,750 for its loss, which amount constituted the difference between $92,250, the price Metlease paid for the vehicles, and $38,500, the amount Metlease received when it sold the vehicles to Griffen. The court also found Sharon Itule's liability in this debt to be dischargeable. Finally, the court awarded costs to Metlease, but not attorney's fees.

Judgment was entered on August 1, 1988. Itule timely filed his Notice of Appeal on August 10, 1988. Metlease timely filed its Notice of Cross-appeal on August 24, 1988.

## ISSUES

I. Whether the bankruptcy court erred when it determined that the debt owed to Metlease was nondischargeable.

II. Whether the bankruptcy court erred when it assessed the amount of damages resulting from the debtor's conduct at $53,-750.

III. Whether the court erred in denying Metlease attorney's fees.

## STANDARD OF REVIEW

A bankruptcy court's findings of fact are reviewed under the clearly erroneous stan-

dard and its conclusions of law are reviewed *de novo. Wien Air Alaska, Inc. v. Bachner,* 865 F.2d 1106, 1108 (9th Cir. 1989); Bankr.R. 8013. A finding of fact is clearly erroneous if, after a review of the record, the appellate panel is left with a firm and definite conviction that error has been committed. *In re Burkhart,* 84 B.R. 658, 660 (9th Cir.BAP 1988).

## APPLICABLE STATUTE

Bankruptcy Code section 523 provides in pertinent part:

(a) A discharge under section 727, 1141, 1228(a), 1228(b), or 1328(b) of this title does not discharge an individual debtor from any debt—

(6) for willful and malicious injury by the debtor to another entity or to the property of another entity; ....

## DISCUSSION [4]

### I.

On appeal, Itule contends that the bankruptcy court erred by determining that the debt owed to Metlease was nondischargeable pursuant to Sections 523(a)(4) and (a)(6). We do not need to reach the issue of whether the debt was nondischargeable under Section 523(a)(4) since we find that the debt is nondischargeable under Section 523(a)(6).

The standard for determining what constitutes a "willful and malicious injury" was set forth in the Ninth Circuit's decision *In re Cecchini,* 780 F.2d 1440 (9th Cir. 1986). The Ninth Circuit stated that "[w]hen a wrongful act such as conversion, done intentionally, necessarily produces harm and is without just cause or excuse, it is 'willful and malicious' even absent proof of a specific intent to injure." *Id.* at 1443, *In re Wood,* 96 Bankr. 993, 996 (9th Cir.BAP 1988). In reaching this conclusion, the Ninth Circuit relied heavily on, and adopted language from, *Collier on Bankruptcy:*

---

4. Metlease filed a motion to strike portions of Itule's opening brief and reply brief on the ground that certain deposition testimony contained in the briefs was never offered into evidence at trial and therefore was not part of the trial record and should not be considered on appeal. We disagree.

In order to fall within the exception of section 523(a)(6), the injury to an entity or property must have been willful and malicious. An injury to an entity or property may be a malicious injury within this provision if it was wrongful and without just cause or excessive, even in the absence of personal hatred, spite, or ill-will. The word "willful" means "deliberate or intentional," a deliberate act which necessarily leads to injury. Therefore, *a wrongful act done intentionally, which necessarily produces harm and is without just cause or excuse, may constitute a willful and malicious injury.*

*Cecchini*, 780 F.2d at 1443 (quoting 3 *Collier on Bankruptcy*, ¶ 523.16, at 523–118 (15th ed. 1983) (emphasis added)).

Itule does not dispute that he used the vehicles and removed and retained items from them. Rather, he argues that the court erred by determining that such acts were "willful and malicious." He contends that the acts complained of were excusable because of his financial circumstances, and thus fall within the "just cause or excuse" exception under *Cecchini*.

Itule asserts that he entered into the lease-purchase agreements in reliance on a third party's commitment of financial backing. He contends that because such backing never materialized that he could not financially maintain the business. Itule asserts that Metlease was aware of his financial condition and he contends that, although he attempted to maintain the vehicles, financial problems prevented necessary repairs from being made to the vehicles. Thus, Itule asserts that his actions in not fully maintaining the equipment fall within the "just cause" exception.

Additionally, while admitting that he removed and retained certain items from the leased vehicles, Itule argues that he never sold such items and that he in fact offered to return such items to Metlease. He argues that any conversion of Metlease's property was technical conversion, as opposed to malicious conversion. Itule asserts that he did not consciously attempt to violate Metlease's rights. He also argues

that any conversion was excusable because he believed that the "deckplates," which he installed and left on the trucks, offset the damage to the vehicles and compensated Metlease for the fuel tanks and other items he removed. Itule thus asserts that this is a case of technical conversion which falls within the "just cause" exception of *Cecchini.*

Finally, Itule argues that he, at most, committed dischargeable waste because of his financial condition and that Metlease failed to meet its burden of proving that his failure to perform adequate maintenance was due to his malicious and intentional acts. He cites the case of *In re Mills*, 841 F.2d 902 (9th Cir.1987), in support of his position and for the proposition that actions caused by financial difficulties are not intentional and malicious acts. Thus, Itule contends that because he spent money attempting to fully and properly maintain the vehicles merely constituted waste, as opposed to willful and malicious injury to property.

As discussed above, the test to determine whether an injury is "willful and malicious" under section 523(a)(6) is whether it necessarily results from conduct that is (1) intentional, (2) wrongful and (3) without just cause and excuse. *Cecchini*, 780 F.2d at 1443. The record clearly reflects that Itule intentionally engaged in conduct which necessarily resulted in injury to Metlease's vehicles. Itule intentionally removed and retained equipment, including tires, aluminum wheels and fuel tanks, which belonged to Metlease. He intentionally replaced the removed equipment with inferior equipment. He continued to use the vehicles when they were in such a state of disrepair that continued use would inevitably damage the vehicles and cause their value to be reduced by an amount far beyond normal depreciation caused by ordinary wear and tear. The injury to the vehicles did not result merely from any negligent failure to maintain the vehicles. Rather, the injury resulted from Itule's deliberate and intentional acts in removing equipment from and abusively using the vehicles.

It is also clear that Itule's conduct was wrongful in this regard. Apart from the fact that Itule's conduct breached his contractual duty to repair and maintain the vehicles,[5] his conduct was tortious with respect to the vehicles. Itule engaged in conduct from which injury to the property was substantially certain to arise. With respect to the equipment removed from the vehicles, this conduct amounted to conversion. *See generally* Restatement (Second) of Torts §§ 222A *et. seq.* (1965). With respect to the vehicles themselves, at the very least he committed trespass to chattels. *See generally* Restatement (Second) of Torts §§ 216 *et. seq.* and § 256 (1965). In this regard, Itule's intentional conduct was wrongful for purposes of section 523(a)(6).

Itule has not established any "just cause or excuse" for his wrongful conduct. Itule's cash flow problems cannot justify his deliberate acts and omissions which resulted in the injury to Metlease's property. Although the lack of funds might be valid cause for failure to maintain property, a lack of funds would not justify the removal of parts and continued use when such use would inevitably cause extraordinary depreciation and damage. If Itule lacked funds to repair and maintain the vehicles in a manner that would prevent extraordinary damage and depreciation, he should have returned them to Metlease or, at the very least, quit using them until they could be repaired.

Finally, in response to the applicability of *Mills*, Metlease correctly points out that *Mills* is not a dischargeability case and was not decided under Section 523. The threshold issue in *Mills* was decided under the California Civil Procedure Code Section 580b dealing with real property. Section 580b protects defaulting purchasers from deficiencies attributable to depression in land values. The vehicles in the present case, however, were not real property but personal property. Thus, *Mills* is neither controlling nor persuasive and cannot be cited for the proposition that Itule's "financial misfortunes" provide just cause for his substantially impairing Metlease's property.

In sum, the record is abundantly clear that Itule willfully and maliciously injured Metlease's vehicles and that there was no just cause for his conduct. Therefore, we affirm the bankruptcy court's determination that the debt owed to Metlease is nondischargeable pursuant to Section 523(a)(6).

## II.

The bankruptcy court found that Metlease suffered damages in the amount of $53,750 by subtracting the amount Metlease received when it sold the vehicles ($38,000) from the amount it paid to purchase the vehicles ($92,250). Itule argues that the bankruptcy court's determination of damages was contrary to the evidence and clearly erroneous because the bankruptcy court did not further reduce the damages by the security deposits he had paid to Metlease and by the amounts paid to Metlease under the lease agreements.[6]

■ The initial question is whether the bankruptcy court had sufficient evidence before it to support its damage computation. Metlease bore the burden of proving

---

**5.** Itule's failure to fulfill his contractual duty to repair and maintain the vehicles could not, by itself, amount to wrongful conduct under section 523(a)(6) because this section relates to torts and not contracts. *See* 3 *Collier on Bankruptcy* ¶ 523.16 at 523–115 (15th ed. 1989).

**6.** Itule also argues extensively that the stipulated state court judgment of more than $100,000 should not, as Metlease argued in the court below, have been the measure of damages because the state court judgment was based upon a breach of contract action and the judgment did not establish a prima facie case under section 523(a)(6). In this regard, Metlease argues

that the stipulated state court judgment reflects the correct measure of damages, but in any event, the damages should not be less than those awarded by the bankruptcy court. Because Metlease did not appeal on the issue of whether damages should be the higher amount reflected in the state court judgment and because we affirm the bankruptcy court's damage determination, we do not address whether the state court judgment provides an appropriate measure of damages. We merely determine whether the damage award of the bankruptcy court is supported by the facts and the law.

its damages. It met that burden by showing that the value of the vehicles in good repair, which were several years old and well used, was $92,250. The bankruptcy court's inference that the value remained constant until Itule converted the vehicles was not clearly erroneous. The damages were then appropriately reduced by the amount Metlease received upon the sale of the vehicles. Once Metlease established a *prima facie* case of the amount of damages, the burden shifted to Itule to prove factors which would reduce the amount of the damages. Itule presented no evidence that the vehicles would have depreciated in value had they been properly maintained or that any other factor other than his theft of parts or his use of the vehicles well beyond normal wear and tear caused the value of the vehicles to diminish. We, therefore, cannot conclude that the bankruptcy court committed clear error in determining that the decline in value reflects the damage proximately caused by Itule's willful and malicious conduct.

■ The next question is whether the bankruptcy court erred in failing to reduce the amount of the damages by the amount of Itule's payments under the contract and the security deposits. Bankruptcy courts generally utilize two primary approaches to damages in cases such as this: the "benefit of the bargain" approach and the "out of pocket" approach. *See In re Anguiano*, 99 Bankr. 436 (9th Cir.BAP 1989). In this case, the trial court apparently assumed that the payments and security deposits Itule made applied to the contract balance. After appropriate contract credits, the contract balance exceeded $100,000 as reflected in the state court judgment. The out of pocket measure of damages was $53,750. Although the credits which Itule seeks would be required under the benefit of the bargain approach, they are not required in this case. Here, the trial court utilizes the out of pocket approach and the damages resulting from that approach are less than those which would result had the court applied the benefit of the bargain approach. To hold otherwise would allow the debtor the benefit of his contract without its detriment. Accordingly, Itule's arguments do not alter our decision to affirm the bankruptcy court's damage determination.

### III.

■ Metlease asserts in its cross-appeal that the bankruptcy court erred in denying its request for attorney's fees in this dischargeability action. It argues that Section 523(d), which requires the court to award the debtor costs and attorney's fees if the creditor brings a dischargeability action pursuant to Section 523(a)(2), does not indicate whether a court may award attorney's fees and costs to a prevailing creditor. Therefore, Metlease argues that Section 523(d) does not prohibit the awarding of attorney's fees and costs to a creditor.

Metlease also cites *In re Martin*, 761 F.2d 1163 (6th Cir.1985), in support of its position that it is entitled to recover attorney's fees. In *Martin*, the Sixth Circuit determined that the creditor was entitled to attorney's fees where it had a state-approved contractual right to attorneys' fees. The Sixth Circuit reasoned that although the creditor was not entitled to an award of reasonable attorney's fees under Section 523(d), that a contractual right to attorney's fees, if valid under state law, is part of the debt itself and may be collected by the creditor. *Id.* at 1168. *See also In re Bain*, 527 F.2d 681, 685 (6th Cir.1975). The Sixth Circuit also indicated that the creditor was entitled to reasonable attorney's fees expended to collect on the debt because Section 523(d) was not intended to deprive a creditor was entitled to reasonable attorney's fees expended to collect on the debt because Section 523(d) was not intended to deprive a creditor of this state-approved contractual right. *Martin*, 761 F.2d at 1168. Metlease asserts that it is entitled to recoup the attorney's fees it had expended to collect on the debt owed by the debtors because it had a statutorily-approved contractual provision for attorney's fees in the lease-purchase agreements.

Metlease, however, fails to discuss the applicability of the Ninth Circuit's decision in *In re Fulwiler*, 624 F.2d 908 (9th Cir.

1980). In *Fulwiler*, the Ninth Circuit did not allow a debtor who prevailed in a dischargeability action under Section 17(a)(2) of the Bankruptcy Act to recover attorney's fees incurred in defending that action. The debtor had argued that his right to attorney's fees was based on a provision in the contract which allowed the creditor to recover attorney's fees when enforcing the contract. Additionally, the debtor argued that regardless of the wording, an attorney's fees provision is reciprocally binding, according to the laws of the State of Oregon. *Fulwiler*, 624 F.2d at 909; Or.Rev.Stat. § 20.096.

The Ninth Circuit noted that a dischargeability action, brought under Section 17(a)(2) of the Bankruptcy Act, based upon fraud or a false financial statement, is a federal cause of action and not one based on the contact. *Fulwiler*, 624 F.2d at 910. The Ninth Circuit specifically stated:

> [W]e concur with the weight of authority in this area, and hold that attorney's fees were awardable to successful bankrupts under Section 17 only where the creditor brought the proceeding in bad faith or to harass the bankrupt. There appears to be no other basis on which such an award could be founded.

*Id.*

Although *Fulwiler* was decided under Section 17 of the Bankruptcy Act, its reasoning is still applicable to Section 523(a)(2) of the Bankruptcy Code.

While Section 523(d) does not prohibit the award of attorney's fees to a prevailing creditor in a dischargeability action, neither does the Code authorize such awards. The intent of Congress was to provide protection to a consumer debtor. The purpose of Section 523(d) is to discourage creditors from initiating meritless actions based on Section 523(a)(2) in hope of obtaining a settlement from an honest debtor anxious to save attorney's fees. H.R.Rep. No. 595, 95th Cong., 1st Sess. 365 (1977); S.Rep. No. 989, 95th Cong., 2d Sess. 80 (1978) U.S. Code Cong. & Admin.News, pp. 5787, 5865, 5963, 6320.

In *In re Levinson*, 58 Bankr. 831 (Bankr. N.D.Ill.1986), Judge Ginsberg agreed with the premise set forth in *Martin* and indicated that attorney's fees awarded on contractual grounds by the state court based on an underlying nondischargeable debt are also nondischargeable. *Levinson*, 58 Bankr. at 837. However, Judge Ginsberg, consistent with the decision in *Fulwiler*, stated that:

> [a] sharp contrast must be drawn between the prepetition state court attorneys' fees which the plaintiff seeks to have determined to be nondischargeable in this proceeding and the postpetition attorneys' fees incurred by the plaintiff in litigating this dischargeability complaint in this Court. The overwhelming weight of authority is that the latter type of attorneys' fees are dischargeable because the Bankruptcy Code does not provide for the awarding of attorneys' fees for creditors who prevail in a dischargeability complaint.

*Id.* at 838 n. 7 (citations omitted). *See e.g., Dougherty v. Brackett*, 51 Bankr. 987, 989 (Bankr.D.Colo.1985); *Matter of Benedict*, 15 Bankr. 675, 678–79 (Bankr.W.D.Mo. 1981).

We adopt the approach set forth in *Fulwiler* and hold that Metlease is not entitled to recover the attorney's fees it incurred in bringing this dischargeability action. Metlease's complaint was premised on a federal cause of action, i.e., the determination that the debt owed was nondischargeable. We therefore hold that Metlease is not entitled to attorney's fees.

## IV.

Whether the bankruptcy court erred by exempting the separate and community property of Sharon Itule from the judgment has not been raised on appeal. Metlease has indicated that this Panel need not address this issue unless this case is remanded on some other ground. This is a non-issue since the bankruptcy court never dealt with the issue of whether the separate and community property of Sharon Itule was exempt from the judgment against her husband.

**214**

### CONCLUSION

The bankruptcy court properly determined that the debt owed to Metlease was nondischargeable pursuant to Section 523(a)(6). The bankruptcy court also did not err or abuse its discretion by denying Metlease's request for attorney's fees. The decision of the bankruptcy court, therefore, is AFFIRMED.