**In re John Lewis CAROLAN, Debtor.**

**FIRST CARD, Appellant,**

v.

**John Lewis CAROLAN and Ellen Briones, Appellees.**

**BAP No. EC–96–1462–ROJe.**
**Bankruptcy No. 95–13795–A–7.**
**Adv. No. 95–1250–A.**

United States Bankruptcy Appellate Panel of the Ninth Circuit.

Argued and Submitted Nov. 21, 1996.

Decided Dec. 31, 1996.

Stewart D. Rine, Law Offices of Stewart D. Rine, Concord, CA, for First Card.

Geoffrey H. Sims, Fresno, CA, for John Lewis Carolan.

Ellen Briones, Trustee, Fresno, CA.

Before: RUSSELL, OLLASON and JELLEN,[1] Bankruptcy Judges.

1. The Honorable Edward D. Jellen, Bankruptcy Judge for the Northern District of California, sitting by designation.

## OPINION

RUSSELL, Bankruptcy Judge:

First Card filed a complaint seeking a determination that the debtor's outstanding credit card debt was nondischargeable pursuant to § 523(a)(2)(A).[2] After a trial, the bankruptcy court entered judgment in favor of the debtor and ordered First Card to pay the debtor's attorney's fees and costs pursuant to § 523(d). First Card appeals. We AFFIRM in part and REVERSE in part.

## I. FACTS

In October 1992, First Card issued John Lewis Carolan ("Carolan" or "debtor") a Visa credit card with a credit line of $6,000. Between January 29, 1995 and March 6, 1995, Carolan used the credit card to incur the following charges and cash advances: on January 29, 1995, he obtained a $200 cash advance check which he paid to his church as a tithe; on February 25, 1995, he charged $183.39 worth of dog food; on February 25, 1995, he charged a riding lawnmower which cost $1,973.59; on February 26, 1995, he charged lighting and other hardware in the amount of $712.17; on March 6, 1995, he obtained a cash advance in the amount of $500 for the purpose of paying his rent; and on March 25, 1995, he charged a stereo and a microwave oven which cost $625.47.

On July 21, 1995, approximately four and one half months after Carolan last used the credit card, he filed for chapter 7 relief. Shortly thereafter, First Card filed a complaint seeking to have the credit card debt declared nondischargeable pursuant to § 523(a)(2)(A). At the time of the debtor's bankruptcy filing, the outstanding balance on his account with First Card was $4,381.87.

The debtor answered the complaint by denying that he had obtained the charges and cash advances through false pretenses, false representation or actual fraud. He also contended that because First Card's complaint was not "substantially justified," he was entitled to attorney's fees and costs pursuant to § 523(d).

On April 17, 1996, the bankruptcy court conducted a trial on the nondischargeability complaint. During the course of the trial, First Card attempted to refresh the debtor's recollection of the date that he had opened a Shell Master Card by showing him an unauthenticated TRW credit report which he had not seen before. The debtor's attorney objected and the bankruptcy court sustained the objection.

At the conclusion of the trial, the bankruptcy court stated its findings and conclusions on the record and held that the debt was discharged. In response to the debtor's request for attorney's fees and costs, the bankruptcy court instructed the debtor's attorney to file a declaration specifying the amount of fees and costs that he had incurred in defending the action. The bankruptcy court also provided First Card with an opportunity to submit a supplemental brief on the issue of whether its complaint was substantially justified for purposes of § 523(d).

After reviewing the declaration prepared and submitted by the debtor's attorney and First Card's supplemental brief, the bankruptcy court awarded the debtor's attorney $1500[3] in fees and $107.25 for costs. On May 2, 1996, the bankruptcy court entered its judgment on the complaint combined with an order awarding attorney's fees and costs to the debtor. First Card appeals.

## II. ISSUES

A. Whether the bankruptcy court erred in discharging the debtor's credit card debt to First Card based upon its finding that the debtor did not intend to defraud First Card.

B. Whether the bankruptcy court abused its discretion in sustaining the debtor's evidentiary objection to First Card's attempt to refresh his recollection with a TRW credit report that he had never seen before.

---

2. Unless otherwise indicated, all chapter, section and rule references are to the Bankruptcy Code, 11 U.S.C. §§ 101–1330 and the Federal Rules of Bankruptcy Procedure, Rules 1001–9036.

3. The debtor's attorney submitted an application for fees in the amount of $2,637. After reviewing the application, the bankruptcy court determined that under the circumstances, a reasonable fee was $1500 plus costs in the amount of $107.25.

C. Whether the bankruptcy court abused its discretion in awarding fees and costs to the debtor's attorney pursuant to § 523(d).

## III. STANDARDS OF REVIEW

■■■ Whether a debtor intended to repay a credit card obligation is a question of fact. *In re Lansford,* 822 F.2d 902, 904 (9th Cir.1987); *In re Eashai,* 167 B.R. 181, 183 (9th Cir. BAP 1994), *aff'd,* 87 F.3d 1082 (9th Cir.1996). We review the bankruptcy court's findings of fact for clear error and give due regard to the opportunity of the bankruptcy court to judge the credibility of witnesses. Rule 8013. If two views of the evidence are possible, the bankruptcy court's choice between them cannot be clearly erroneous. *Anderson v. Bessemer City,* 470 U.S. 564, 573, 105 S.Ct. 1504, 1511, 84 L.Ed.2d 518 (1985).

■■ A bankruptcy court's evidentiary rulings are reviewed for an abuse of discretion. *Ingram v. Acands, Inc.,* 977 F.2d 1332, 1341 (9th Cir.1992).

■■ An award of attorney's fees and costs pursuant to § 523(d) is also reviewed for an abuse of discretion. *In re Harvey,* 172 B.R. 314, 318 (9th Cir. BAP 1994).

## IV. DISCUSSION

First Card argues that the bankruptcy court erred in finding that the debtor did not intend to defraud First Card and, therefore, erred in concluding that the credit card debt was discharged. Specifically, First Card asserts that the bankruptcy court failed to do an *"Eashai* analysis" and erred in applying the *"Dougherty* factors" to this case. First Card also contends that the bankruptcy court abused its discretion in sustaining the debtor's evidentiary objection to First Card's attempt to refresh the debtor's memory with a TRW credit report.

Finally, First Card takes the position that it was substantially justified in bringing the nondischargeability complaint and, therefore, the bankruptcy court abused its discretion in

awarding fees and costs to the debtor's attorney pursuant to § 523(d).

A. *The Debtor's Intent to Repay His Credit Card Debt*

1. *The applicable law for determining actual intent*

Section 523 sets forth the exceptions to the general rule that debts may be discharged in bankruptcy. In pertinent part, § 523(a)(2)(A) provides that a discharge under § 727 does not release a debt:

> (2) for money, property, services or an extension, renewal, or refinancing of credit, to the extent obtained by—
>> (A) false pretenses, a false representation or actual fraud, other than a statement representing the debtor's or an insider's financial condition.

■■ To establish a claim for actual fraud under § 523(a)(2)(A), a plaintiff must prove the following elements:

1. That the debtor made representations;
2. That at the time the representations were made, the debtor knew them to be false;
3. That the debtor made the representations with the intent and purpose of deceiving the creditor;
4. That the creditor justifiably relied on the representations;[4] and
5. That the creditor sustained the alleged injury as a proximate result of such representations.

*In re Arm,* 87 F.3d 1046, 1049 (9th Cir.1996); *In re Britton,* 950 F.2d 602, 604 (9th Cir. 1991). A creditor must prove each of the above elements based upon a preponderance of the evidence. *Grogan v. Garner,* 498 U.S. 279, 286, 111 S.Ct. 654, 659, 112 L.Ed.2d 755 (1991).

■■ The Ninth Circuit has adopted a totality of the circumstances approach for finding intent in cases of actual fraud involving credit card debt. *Eashai,* 87 F.3d at 1088 (approving the totality of the circumstances

---

**4.** At the trial in this case, the creditor presented no evidence as to its reliance.

Because of the conclusions expressed above, we need not decide whether First Card's failure at trial to address this element of § 523(a)(2)(A) presents an additional ground for us to affirm the

ruling that the debt is dischargeable. Nor need we decide whether, instead, the debtor had the burden of showing at trial that First Card was in possession of information that would preclude a finding of justifiable reliance.

approach and the *Dougherty* factors for finding intent); *In re Dougherty*, 84 B.R. 653, 657 (9th Cir. BAP 1988). Under this approach, a bankruptcy court may determine that a debtor intended to deceive a creditor concerning his intent to repay a credit card debt based upon the following list of non-exclusive objective factors:

1. The length of time between the charges made and the filing of bankruptcy;

2. Whether or not an attorney has been consulted concerning the filing of bankruptcy before the charges were made;

3. The number of charges made;

4. The amount of the charges;

5. The financial condition of the debtor at the time the charges were made;

6. Whether the charges were above the credit limit of the account;

7. Whether the debtor made multiple charges on the same day;

8. Whether or not the debtor was employed;

9. The debtor's prospects for employment;

10. Financial sophistication of the debtor;

11. Whether there was a sudden change in the debtor's buying habits; and

12. Whether the purchases were made for luxuries or necessities.

*Dougherty*, 84 B.R. at 657 (*citing In re Faulk*, 69 B.R. 743, 757 (Bankr.N.D.Ind. 1986)).

According to First Card, the bankruptcy court erred in finding that the debtor did not intend to defraud his creditors because the bankruptcy court failed to cite *In re Eashai*, 167 B.R. 181 (9th Cir. BAP 1994) or to perform an *Eashai*, "income vs. expenses analysis." Had the bankruptcy court done this analysis, contends First Card, it would have realized that the debtor's expenses exceeded his income by at least $488.33 per month and presumably would have concluded from this calculation that the debtor was hopelessly insolvent. Based upon this conclusion, First Card contends that the bankruptcy court should have inferred that the debtor did not intend to repay the credit card debt at the time he incurred the charges.

■ Contrary to First Card's assertion, *Eashai* did not create a separate income and expenses analysis for determining whether a debtor possessed an actual intent to defraud his creditors. Rather, in *Eashai* we stated that the use of a credit card without a reasonable prospect of an ability to repay the debt or to meet the contract terms is circumstantial evidence from which a bankruptcy court may infer fraudulent intent.[5] *Eashai*, 167 B.R. at 185. This statement is, in large part, a summary of the fifth *Dougherty* factor which requires the bankruptcy court to consider the financial condition of the debtor at the time the charges were made. Because it is clear that the bankruptcy court considered this factor as part of its *Dougherty* analysis, the absence of a citation to *Eashai* by the bankruptcy court is not dispositive.[6]

---

**5.** We also note that in *In re Anastas*, 94 F.3d 1280 (9th Cir.1996) which was decided during the pendency of this appeal, the Ninth Circuit recently affirmed that a debtor's financial hopelessness, in isolation, is not a basis for declaring a debt nondischargeable. *Coopers & Lybrand v. Sun–Diamond Growers of CA*, 912 F.2d 1135, 1138 (9th Cir.1990) (retroactively applying a judicial decision is the general rule unless one of the exceptions is met).

The *Anastas* Court discussed the interplay between the debtor's financial condition and a finding of intent to defraud for purposes of § 523(a)(2)(A). It cautioned that:

While we recognize that a view to the debtor's overall financial condition is a necessary part to inferring whether or not the debtor incurred the debt maliciously and in bad faith, and that the twelve factors we set out in *Eashai* are useful for arriving at a finding of bad faith, the

hopeless state of a debtor's financial condition should never become a substitute for an actual finding of bad faith.

*Id.* at 1285. The Ninth Circuit concluded that the central inquiry in determining whether there was a fraudulent representation is whether the card holder lacked an intent to repay at the time he made the charges, not whether he lacked the ability to pay. *Id.*

**6.** First Card's argument that the bankruptcy court did not consider the debtor's income and expenses in rendering its decision is surprising given that the bankruptcy court found that this factor weighed in First Card's favor. The bankruptcy court's findings stated, "Number five, the financial condition of the debtor at the time that the charges were made. Based upon the evidence before me, I find that this element in favor of the plaintiff."

### 2. The bankruptcy court's interpretation of the Dougherty factors

Having rejected First Card's contentions concerning the debtor's financial condition as a basis for finding intent, we next address First Card's contention that the bankruptcy court committed an error of law by employing an overly restrictive view of the other eleven *Dougherty* factors. As an example of this allegedly overly restrictive view, First Card argues that when the bankruptcy court applied the first factor, which considers the length of time between the last charge and the filing date, the bankruptcy court should have focused on the date that the debtor consulted with an attorney as opposed to the date the petition was filed.

Specifically, it was undisputed that the last charge was incurred on March 25, 1995. Five days later, the debtor consulted with an attorney, but did not file bankruptcy until July 21, 1995. According to First Card, the delay between the time of the consultation and the actual filing of the bankruptcy petition suggests that debtor's attorney stalled the filing to avoid the appearance of fraud. First Card therefore contends that the bankruptcy court should have evaluated the first factor based upon the date the attorney was first consulted instead of the date the petition was filed.

With respect to the second factor, whether an attorney was consulted before the charges were made, First Card asserts that the bankruptcy court should have taken into account whether the debtor had consulted consumer credit counselors as well as attorneys. In this case, the debtor consulted with consumer credit counselors, but not an attorney, before incurring the charges in question.

Based upon the above examples and the others that are discussed in First Card's opening brief, First Card attempts to demonstrate that the *Dougherty* factors can be extrapolated to support a finding that the debtor intended to defraud First Card. We conclude, however, that there is no support for First Card's interpretation of the *Dougherty* factors. While we acknowledge that *Dougherty* set forth a *non-exclusive* list of factors, this does not mean that we have the liberty to rewrite the ones established by *Dougherty* in the manner suggested by First Card.

The record [7] reflects that the bankruptcy court properly interpreted the *Dougherty* factors and methodically applied all of these factors in deciding whether the debtor intended to defraud First Card. After applying the dozen factors to the instant case, the bankruptcy court concluded that ten were favorable to the debtor, one favored the creditor and one was neutral. Based upon the record before us, we conclude that the bankruptcy court's finding that the debtor did not intend to defraud First Card when he incurred the credit card debt was not clearly erroneous.

### B. The Bankruptcy Court's Evidentiary Ruling Regarding First Card's Attempt to Refresh the Debtor's Recollection

First Card also appeals the bankruptcy court's ruling to sustain the debtor's evidentiary objection to its attempt to question the debtor about a TRW report that he had never seen before and that had not been authenticated. In support of this argument, First Card asserts in its opening brief that, "It is axiomatic that a witness can be shown *anything* to attempt to refresh recollection—anything." (Emphasis in original).

This argument fails in several respects. First Card offers no specific facts to support its contention that the bankruptcy court abused its discretion in sustaining the objection. Although a witness can generally be shown anything to refresh his or her recollection under Federal Rule of Evidence 612, in this case, there was no showing of how or why showing the debtor an unauthenticated TRW report that he had never seen before would refresh his recollection. Also, it has not been alleged that this evidentiary ruling had any impact on the outcome of this case. To the contrary, First Card admits that the issue is a minor point and was raised solely for the purpose of showing the bankruptcy court's bias against its case.

---

**7.** First Card supplemented its opening brief with a transcript from the trial. Although several of the pages were omitted, all of the bankruptcy court's findings and conclusions were stated on the pages that were included.

Even if the bankruptcy court's ruling on this matter were mistaken, an erroneous evidentiary ruling is subject to harmless error review. 28 U.S.C. § 2111.[8] By First Card's own admission, this ruling did not affect its substantive rights. Thus, the error, if any, was harmless. *United States v. Shirley*, 884 F.2d 1130, 1132 (9th Cir.1989).

### C. *Attorney's Fees and Costs Pursuant to § 523(d)* [9]

 A debtor who prevails in a nondischargeability proceeding initiated by a creditor and involving a consumer debt is entitled to attorney's fees and costs unless the creditor establishes that its nondischargeability complaint was substantially justified. § 523(d).[10] We have held that the filing or the prosecution of a nondischargeability complaint is substantially justified for purposes of § 523(d) if the creditor had a reasonable basis in law or fact, or special circumstances existed. *Harvey*, 172 B.R. at 318.

 Section 523(d) was intended to discourage creditors from initiating meritless actions based on § 523(a)(2) in the hope of obtaining a settlement from an honest debtor anxious to save attorney's fees. *In re Itule*, 114 B.R. 206, 213 (9th Cir. BAP 1990). However, this concern must be balanced against the risk that imposing the expense of the debtor's attorney's fees and costs on the creditor may chill creditor efforts to have debts that were procured through fraud declared nondischargeable. Thus, the substantially justified standard should not be read to raise a presumption that the creditor was not substantially justified simply because it lost the challenge. S.Rep. No. 98–65, at 58, 59 (1983) (Senate Report accompanying S. 445, Omnibus Bankruptcy Improvements Act of 1983, which was a forerunner to the Bankr. Amend. Act of 1984).

 In the instant case, First Card contends that even if the Panel does not reverse the judgment, it should reverse the order awarding attorney's fees to the debtor. First Card argues, *inter alia*, that it was substantially justified in filing and prosecuting the nondischargeability action as that term is defined in *Pierce v. Underwood*, 487 U.S. 552, 564–65, 108 S.Ct. 2541, 2549–50, 101 L.Ed.2d 490 (1988). In support of its position that the complaint was grounded in both law and fact, First Card relies on the bankruptcy court's finding that one of the *Dougherty* factors, the debtor's financial condition at the time the charges were made, was decided in First Card's favor.

The bankruptcy court concluded that First Card did not meet its burden of proving that its actions were substantially justified. The bankruptcy court stated on the record, "this complaint was not substantially justified in its filing and carried through to trial, and I find that there are no special circumstances which would make the award unjust."

While we do not dispute the bankruptcy court's finding that the debtor did not intend to defraud First Card, we disagree with the conclusion that First Card was not substantially justified in filing the complaint even though the bankruptcy court found that a significant number of the *Dougherty* factors weighed in favor of the debtor. Despite this imbalance, the record reflects that a substantial amount of the charges were incurred over a ten day period. One of the purchases was for a fairly expensive lawnmower, another was a $200 cash advance that was allegedly paid as a tithe to the debtor's church. Other purchases included a microwave and a

---

8. **28 U.S.C. § 2111. Harmless Error.**

On the hearing of any appeal or writ of certiorari in any case, the court shall give judgment after an examination of the record without regard to errors or defects which do not affect the substantial rights of the parties.

9. First Card does not specifically address costs in its opening brief. Thus, for purposes of this appeal we have assumed this appeal relates to the attorney's fees only. As the prevailing party the debtor was entitled to reimbursement for his costs.

10. **§ 523. Exceptions to discharge.**

. . . .

(d) If a creditor requests a determination of dischargeability of a consumer debt under subsection (a)(2) of this section, and such debt is discharged, the court shall grant judgment in favor of the debtor for the costs of, and a reasonable attorney's fee for, the proceeding if the court finds that the position of the creditor was not substantially justified, except that the court shall not award such costs and fees if special circumstances would make the award unjust.

stereo which arguably could have been construed as luxury items. In addition, at the time the charges were incurred, the debtor's monthly expenses exceeded or nearly exceeded his income. Considering these factors in their totality, we conclude that the filing of nondischargeability complaint was substantially justified.

Having determined that the filing of the complaint was substantially justified, we next address the bankruptcy court's additional finding that First Card was not substantially justified in proceeding to trial. The record before us contains the complaint, the answer, the parties' respective trial briefs, the plaintiff's supplemental trial brief and the trial transcript. However, neither party has included any discovery documents as part of the record on appeal. Thus, we are unable to determine whether First Card learned of any information through the discovery process that should have dissuaded it from carrying the matter through to trial. Given our conclusion that the filing of the complaint was substantially justified, we further conclude that absent any evidence in the record to show that First Card subsequently discovered facts which would have demonstrated that the complaint lacked a basis in law or fact, First Card was substantially justified in proceeding to trial on the complaint.

## V. CONCLUSION

The bankruptcy court's finding that the debtor did not intend to defraud First Card is plausible in light of the record before us and, therefore, it was not clearly erroneous. Also, the bankruptcy court did not abuse its discretion in sustaining the debtor's evidentiary objection to First Card's attempt to refresh the debtor's recollection with an unauthenticated TRW report. Accordingly, we AFFIRM the bankruptcy court's judgment discharging the debt.

We conclude however, that the bankruptcy court's findings that neither the filing nor the prosecution of the complaint were substantially justified were clearly erroneous. Accordingly, we conclude that the bankruptcy court abused its discretion in awarding attorney's fees to the debtor pursuant to § 523(d) and we REVERSE on this issue.

OLLASON, Bankruptcy Judge, concurring:

I agree that First Card's complaint was substantially justified on the facts of this case so as not to warrant the debtor's award of attorney's fees. Generally, however, it appears the litigation expenses of banks to determine the credit card debt nondischargeable outweigh their expenditures to discover or pursue warnings of default which would preclude an extension of credit in the first place. This tactic, of course, increases the debtor's legal expenses and compromises judicial economy. In awarding attorney's fees for the prevailing debtor, judges should be equally concerned with the chilling of the bank's interest in pursuing a fraudulent debtor in bankruptcy as with the bank's indifference to a debtor's financial situation at the time it solicits or extends the credit. *See In re McDaniel*, 202 B.R. 74, 79 (Bankr. N.D.Tex.1996) (financially strapped debtor was victim of "commercial entrapment" when bank enticed him to consolidate bills and to purchase holiday gifts with low interest rate).