In re Cynthia L. DUPLANTE, Debtor.

**AT & T UNIVERSAL CARD SERVICES CORPORATION, Appellant,**

v.

**Cynthia L. DUPLANTE, Appellee.**

**BAP No. SC–97–1033–MORO.**
**Bankruptcy No. 96–03345.**
**Adversary No. 96–90382.**

United States Bankruptcy Appellate Panel of the Ninth Circuit.

Argued and Submitted Sept. 18, 1997.

Decided Nov. 25, 1997.

---

Steven N. Kurtz, Encino, CA, for Appellant.

John J. Murphy, Murphy Law Offices, Carlsbad, CA, for Appellee.

Before: MONTALI,[1] RUSSELL, and OLLASON, Bankruptcy Judges.

### OPINION

MONTALI, Bankruptcy Judge.

A creditor appeals the bankruptcy court's decision to award attorney's fees and costs to the debtor pursuant to 11 U.S.C. § 523(d).[2] We **REVERSE.**

### I.

### FACTS

Based upon a review of the schedules and statement of financial affairs of appellee, Cynthia L. Duplante ("Debtor"), as well as a review of her monthly credit card statements, appellant AT & T Universal Card Services Corporation ("Plaintiff") commenced an adversary proceeding by filing a com-

---

1. Honorable Dennis Montali, Bankruptcy Judge for the Northern District of California, sitting by designation.

2. Unless otherwise indicated, all section and rule references are to the Bankruptcy Code, 11 U.S.C. §§ 101–1330 and the Federal Rules of Bankruptcy Procedure, Rules 1001–9036.

plaint under section 523(a)(2), alleging fraud by Debtor in incurring charges which she allegedly did not have the intent to repay. Before filing the complaint, neither Plaintiff nor its counsel attended the section 341 meeting or requested a Rule 2004 examination. After the complaint was filed, Plaintiff did not engage any discovery of Debtor. The complaint was skeletal and contained factually incorrect allegations.[3]

Approximately three months after the complaint was filed, the Ninth Circuit Court of Appeals issued its decision in *Anastas v. American Savings Bank (In re Anastas)*, 94 F.3d 1280 (9th Cir.1996). Plaintiff's counsel alleges that as a result of this decision, he re-evaluated the underlying adversary proceeding. Plaintiff's counsel felt that *Anastas* limited the inferences which could be drawn with respect to fraudulent intent, therefore affecting Plaintiff's ability to prevail where a substantial portion of its case involved Debtor's hopeless financial condition and her inability to service her debt to Plaintiff and other credit card issuers. Consequently, two weeks prior to trial, Plaintiff's counsel filed and served a notice of dismissal of the adversary proceeding.[4] Because Federal Rule of Civil Procedure 41(a) (made applicable here by Rule 7041) requires court approval of a non-stipulated dismissal of a case when an answer has been filed, the court scheduled a hearing on the requested dismissal for December 2, 1996, the original trial date.

On the Wednesday prior to Thanksgiving (November 27, 1996), Debtor's counsel filed and served a motion for sanctions and attorney's fees pursuant to Rule 9011 and section 523(d), which he also set for hearing on December 2, 1996. The court heard oral argument on that day, allowed the parties to submit post-hearing briefs, and entered an order awarding Debtor's counsel $3913.42 in attorney's fees and costs pursuant to section 523(d).[5] Plaintiff appeals that decision.[6] The court denied Debtor's request for sanctions under Rule 9011 and Debtor did not cross appeal this ruling.

## II.

### ISSUE ON APPEAL

Whether the bankruptcy court abused its discretion in awarding fees and costs to Debtor's attorney pursuant to section 523(d).

## III.

### STANDARD OF REVIEW

An award of attorney's fees and costs pursuant to section 523(d) is reviewed for an abuse of discretion. *First Card v. Carolan (In re Carolan)*, 204 B.R. 980, 984 (9th Cir. BAP 1996).

## IV.

### DISCUSSION

**A. Documentary Evidence**

In arguing that he was substantially justified in filing the complaint, Plaintiff's counsel alleges that he relied on Debtor's schedules and statement of financial affairs and on the credit card statements sent to Debtor. Consequently, a review of these documents is essential in determining whether the filing

---

3. Although these flaws were caused by careless pleading and proof-reading, they are not material to the precise issue presented in this appeal: a discretionary award of fees under section 523(d).

4. Plaintiff filed a "Voluntary Dismissal of Adversary Proceeding Without Prejudice," which was served on Debtor and her counsel on November 18, 1996. The text of this notice purported to dismiss the adversary proceeding "with prejudice" (notwithstanding the title). On or about November 25, 1996, Plaintiff filed and served a "Voluntary Dismissal of Adversary Proceeding With Prejudice" ("the Second Dismissal Notice").

5. Plaintiff argues that it received inadequate notice of the motion for sanctions and that the court's consideration of the motion denied Plaintiff its due process. The record does not reflect that Plaintiff objected to the post-hearing briefing schedule. Because the court did provide Plaintiff with an opportunity to submit post-hearing briefs and evidence, any consideration of the motion despite lack of notice or an order shortening time is harmless error.

6. The underlying decision has been published: *AT&T Universal Card Services Corp. v. Duplante (In re Duplante)*, 204 B.R. 49 (Bankr.S.D.Cal. 1996).

was substantially justified under section 523(d).[7]

■ Debtor and her husband ("Co–Debtor") filed their joint Chapter 7 petition on March 12, 1996 (the "Petition Date"). Debtor is a bookkeeper. According to Debtor's schedules, she incurred almost $80,000 in unsecured credit card debt in 1995 and 1996 (through the Petition Date).[8] In that same time period, her income and the income of Co–Debtor totalled only $26,140. In addition, her monthly expenses exceed her monthly income by approximately $1,000.[9]

In June 1995, Debtor paid $4,070 to Plaintiff; thereafter, in July 1995, Plaintiff issued Debtor a credit balance refund check in the amount of $1,985. The next transaction occurred on September 21, 1995, when Debtor charged $1,900 to pay an attorney. In the one month and nine days following that charge, she made 56 purchases totaling $5,609.16 (including the charge to the attorney) [10] and her charges exceeded her credit limit at least once.[11] The charges incurred in this one month and nine day period were three times her monthly income. Some of these purchases were made from retailers who likely do not traditionally carry items which are essential for the support of an individual or family.[12] She made only two payments after that date, one in the amount of $280.15 and another in the amount of $10.00. She made the last charge on this account on November 1, 1995. After receiving credit adjustments from certain merchants and after crediting the two payments made, the total amount owed on the credit card account with Plaintiff as of the Petition Date was $4,717.19 (although the complaint seeks recovery of $4,732.19, which amount includes a post-petition late fee).

7. Duplicates of Plaintiff's monthly credit card statements were attached to the declarations of Debtor's counsel, and of Plaintiff's counsel. Because Debtor's counsel omitted several relevant pages of the statements (i.e., the second page of the statement covering the billing period from September 23, 1995, through October 22, 1995), the panel has relied on the statements appended to Plaintiff's counsel's declaration.

8. Schedule F reflects that Debtor incurred $79,270.01 in unsecured credit card debt in 1995 and 1996 (as of the Petition Date) on twelve separate accounts. Co–Debtor listed an additional credit card debt of $6,898.18 for which he claimed separate liability. Thus, the total unsecured credit card debt of Debtor and Co–Debtor was $86,168.19.

At oral argument, counsel for Debtor asserted that the debt was not necessarily incurred in 1995 and 1996, despite the language of the schedules. In essence, he argued that schedules and statements of financial affairs are not necessarily precisely correct, and that it is the burden of a creditor to attend a section 341 meeting or conduct a Rule 2004 examination to ascertain the true financial condition of a debtor. The panel disagrees. Schedules and statements of financial affairs are sworn statements, signed by debtors under penalty of perjury. Adopting a cavalier attitude toward the accuracy of the schedules and expecting the court and creditors to ferret out the truth is not acceptable conduct by debtors or their counsel.

9. According to the response of Debtor and Co–Debtor to Question 1 of the Statement of Financial Affairs, their 1994 joint gross income equaled $30,353; their joint gross income in 1995 equaled $23,657; and the gross income realized from January 1996 through "present" was $2,483. Co–Debtor was unemployed in 1995; Schedule I reflects that he was still unemployed when the case was filed. Schedule I also reflects a monthly net take home pay of $1,505 for Debtor, plus alimony payments in the amount of $253, while her monthly expenditures equaled $2,572. Co–Debtor's monthly income consisted of a $500 loan payment from his mother, while his monthly expenses equaled $753 a month (which includes the alimony payment of $253 to Debtor). Essentially, the monthly expenses of Debtor exceeded her monthly income by approximately $1,000.00.

10. During this period, Debtor also received three credit adjustments in the amount of $998.90.

11. As noted in footnote 7 above, Debtor's counsel failed to append all of the pages of the monthly statements. For example, he did not attach the second page of the statement for the billing period of September 23, 1995 through October 22, 1995. That page specifically states: "Your account is currently $192.15 overlimit." Perhaps relying exclusively on the incomplete set of statements provided by Debtor, the bankruptcy court erred when it stated that "the history of the credit account clearly shows Debtor never exceeded the credit card limit."

12. These purchases included a $511 charge for the benefit of "Miwall–Wholesale Ammo;" charges for $210.55, $42.77, and $87.68 for the benefit of Pet Supply Warehouse; a $90.93 charge for the benefit of Toys R Us; and charges for $153.01 and $113.42 for the benefit of Capezio.

After the Petition Date, counsel for Plaintiff sent a letter to counsel for the Debtor, expressing his belief that Plaintiff's records provided evidence that Debtor did not have the intent to repay the debts at the time the charges were made. In a rather confusing response, Debtor's counsel wrote:

My reading of 11 U.S.C. § 523(a)(2)(C) [13] leads me to conclude that in order to be held liable as you have threatened, the debtor must have incurred the debt in excess of $1000 within 60 days of filing bankruptcy. Ms. Duplante did not incur the debt within 60 days, although she certainly did have a debt in excess of $1,000 by the time she filed bankruptcy.

If your understanding of this section is correct, then any creditor who carries a debt in excess of $1,000 at the time a debtor files bankruptcy would be able to take the same position. I do not believe this is the basis on which § 523 is drawn.

In addition, under § 523(d), if you file a complaint to determine dischargeability of the AT & T debt and lose, your client may face payment of Ms. Duplante's legal fees and costs. Is it really worth the risk?

Approximately one week later, Plaintiff's counsel filed the complaint, alleging that the Debtor was aware or should have been aware that she was unable to pay her bills as they became due, that she was insolvent, and that she did not have the ability or intent to repay the amount owed.[14] Consequently, according to the complaint, Debtor received credit by false pretenses, false representations, or actual fraud; Plaintiff prayed for denial of discharge of the debt pursuant to section 523(a)(2). Plaintiff did not rely on the presumption of fraud provision of subsection (C) of section 523(a)(2).

In paragraphs 5 and 6 of the Complaint, Plaintiff made several allegations that are controverted by its own credit card statements. The bankruptcy court emphasized these errors in finding that the complaint was not substantially justified. Interestingly, however, the bankruptcy court (perhaps relying on mischaracterizations of the documentary evidence by Debtor's counsel) made several factual findings which are contrary to the credit card statements. Because the bankruptcy court focused so heavily on the errors of the complaint, the panel is addressing them here. Nevertheless, these errors—while evidence of sloppy and inattentive lawyering which might have justified an award of sanctions under Rule 9011—do not necessarily support a finding of lack of substantial justification under section 523(d).

Paragraphs 5 and 6 of the Complaint state:

5. Defendant opened a charge account with the Plaintiff under MasterCard Account No. 5398–7100–4020–6842. Defendant incurred charges under the account totaling $4732.19, plus interest at the contract rate, from and after January 25, 1996. The aforesaid debt is a consumer debt as defined in § 101(a) of the Bankruptcy Code.

6. Review of Defendants' [sic] account indicates that within 5 months prior to her Chapter 7 filing, the Defendant incurred charges in sum [sic] of $5,609.16, and has made only 2 payments since October, the last of which was only $10.00.

■ Paragraph 6 is incorrect, because Debtor made only approximately $1,300 in purchases within five months of filing bankruptcy;[15] she made $5,609.16 in purchases within five months *and twenty-one days* of the petition date. Paragraph 5 contains the

---

13. In his letter, counsel for Plaintiff did not cite subsection (C) of section 523(a)(2), which establishes a presumption of non-dischargeability if a debtor purchases more than $1,000 in luxury goods or services or obtains more than $1,000 in cash advances within sixty days of his petition date. Plaintiff's counsel merely stated that the timing and amounts of the charges "as defined in 11 U.S.C. § 523(a)(2)" provided evidence that Debtor did not have the intent to repay the debt when the changes were incurred.

14. In oral argument and in his brief, Plaintiff's counsel noted that Debtor's counsel did not take the opportunity to inform Plaintiff of possible mitigating family circumstances in his response letter. Consequently, Plaintiff's counsel did not learn about these circumstances—which were a factor in decision to dismiss the complaint—until after the filing.

15. The bankruptcy court was thus incorrect when it stated that "no charges of any amount" were made within five months of the Petition Date.

more substantive error. It alleges that Debtor incurred more than $4,000 in charges from and after January 25, 1996 [16] (which, if true, could give rise to the presumption of fraud set forth in section 523(a)(2)(C)). Debtor, however, did not incur any charges after November 1, 1995. Nevertheless, because Plaintiff did not argue that the 523(a)(2)(C) presumption was applicable, neither one of these errors is material in a section 523(a)(2) analysis. These errors reflect poor drafting and editing, as do the use of masculine pronouns in referring to Debtor elsewhere in the complaint. They do not, however, support a finding of lack of substantial justification under section 523(d).

### B. *"Totality of Circumstances" Test*

Section 523(d) provides:

If a creditor requests a determination of dischargeability of a consumer debt under subsection (a)(2) of this section, and such debt is discharged, the court shall grant judgment in favor of the debtor for the costs of, and a reasonable attorney's fee for, the proceeding if the court finds that the position of the creditor was not substantially justified, except that the court shall not award such costs and fees if special circumstances would make the award unjust.

To avoid a fee award, a creditor must show that it had a reasonable basis in law or fact to file an action, or otherwise demonstrate the existence of special circumstances. *Carolan,* 204 B.R. at 987, citing *American Savings Bank v. Harvey (In re Harvey),* 172 B.R. 314, 318 (9th Cir. BAP 1994).

Section 523(d) was intended to discourage creditors from initiating meritless actions based on s 523(a)(2) in the hope of obtaining a settlement from an honest debtor anxious to save attorney's fees. *In re Itule,* 114 B.R. 206, 213 (9th Cir. BAP 1990). However, this concern must be balanced against the risk that imposing the

expense of the debtor's attorney's fees and costs on the creditor may chill creditor efforts to have debts that were procured through fraud declared nondischargeable.

*Carolan,* 204 B.R. at 987.

In this case, Plaintiff contends that the underlying adversary proceeding had a reasonable basis in fact and in the law at the time the complaint was filed. Plaintiff alleged a cause of action of actual fraud against Duplante pursuant to section 523(a)(2)(A). An essential element of such a claim is intent to deceive by a debtor. The Ninth Circuit has adopted a "totality of circumstances" approach for finding intent in cases of actual fraud involving credit card debt. *Carolan,* 204 B.R. at 984, *citing Citibank (South Dakota) v. Eashai (In re Eashai),* 87 F.3d 1082, 1087–88 (9th Cir.1996). In other words, courts in the Ninth Circuit can infer the existence of a debtor's intent not to pay her credit card charges as they were incurred if the facts and circumstances of a particular case present a picture of deceptive conduct by a debtor. In *Citibank South Dakota N.A. v. Dougherty (In re Dougherty),* 84 B.R. 653, 657 (9th Cir. BAP 1988), the Bankruptcy Appellate Panel set out twelve nonexclusive factors for determining whether a debtor intended to deceive a creditor concerning her intent to repay a credit card debt:

1. The length of time between the charges made and the filing of bankruptcy;

2. Whether or not an attorney has been consulted concerning the filing of bankruptcy before the charges were made;

3. The number of charges made;

4. The amount of the charges;

5. The financial condition of the debtor at the time the charges were made;

6. Whether the charges were above the credit limit of the account;

---

16. At oral argument, counsel for Plaintiff contended that the comma after "plus interest at the contract rate" in paragraph 5 of the complaint should not have been inserted. Under his argument, the phrase "from and after January 25, 1996" defines the accrual of interest, not the

incurring of charges by Debtor. The panel does not place any weight in this argument, especially where counsel for Plaintiff could not explain why interest would have accrued from and after that particular date.

7. Whether the debtor made multiple charges on the same day;

8. Whether or not the debtor was employed;

9. The debtor's prospects for employment;

10. Financial sophistication of the debtor;

11. Whether there was a sudden change in the debtor's buying habits;

12. Whether the purchases were made for luxuries or necessities.

*Id.* at 657.

Plaintiff contends that its analysis of Duplante's schedules, statement of financial affairs, and credit card statements indicated that many of the *Dougherty* factors were present. Therefore, in determining whether Plaintiff was substantially justified in filing an action for actual fraud under section 523, the bankruptcy court should have analyzed these particular pleadings and exhibits by applying the *Dougherty* test. It apparently did not do so, inasmuch as an analysis of these documents shows that many of the *Dougherty* factors were present. Instead, the court merely stated that the complaint alleged "no facts supporting the Dougherty factors." This is an analysis of the sufficiency of the allegations of the complaint, but not an analysis of the justification for filing the adversary proceeding. By failing to analyze Debtor's schedules and statement of financial affairs to determine whether the "totality of circumstances" justified the filing of the underlying complaint, the bankruptcy court abused its discretion in holding that Plaintiff was not "substantially justified." *See Carolan,* 204 B.R. at 987–88 (analyzing documents available to creditor upon filing, Bankruptcy Appellate Panel disagreed with conclusion that creditor was not substantially justified in filing section 523 complaint even though bankruptcy court found that a significant number of the

*Dougherty* factors favored debtor, where consideration of factors in "totality" justified complaint).[17]

Had the court below analyzed Duplante's judicial admissions and credit card statement by applying the *Dougherty* test, it would have clearly found that the fifth factor—the financial condition of the debtor at the time the charges were made—weighed heavily in favor of Plaintiff. Moreover, at least five other factors could have been decided in Plaintiff's favor. Debtor incurred approximately $80,000 in credit card debt when her annual income was less than $25,000. In a one-month period, she made 56 purchases totaling more than $5,000 (even though her monthly take home pay was only $1,505 and her fixed monthly expenses exceeded $2,500), and she exceeded her credit limit. She made these purchases within six months of the bankruptcy filing. She made only minimal payments after incurring these debts and prior to the Petition Date. As a bookkeeper, she should have been relatively financially sophisticated. Under these facts, it appears that the filing of the complaint was substantially justified by Plaintiff *at the time the case was commenced. Carolan,* 204 B.R. at 987–88. A creditor reviewing the credit card statements and Debtor's schedules and financial statements would have been justified in believing, at least initially, that it could prevail in a *Dougherty* analysis. Considering these factors in their totality, the Plaintiff was substantially justified in filing the complaint. *See Carolan,* 204 B.R. at 987 (where even fewer factors weighed in favor of the plaintiff, but complaint was nevertheless "substantially justified").

### C. *Anastas Decision*

When Plaintiff filed its complaint on June 10, 1996, the Ninth Circuit had not yet issued its decision in *Anastas,* 94 F.3d at 1280.

---

**17.** The bankruptcy court, relying on a bankruptcy court case from Missouri (*AT&T Universal Card Services v. Grayson (In re Grayson),* 199 B.R. 397, 400–02 (Bankr.W.D.Mo.1996)), placed much significance on Plaintiff's failure to attend the section 341 meeting or to request a Rule 2004 examination prior to filing the complaint. In this case, however, Debtor's schedules and statement of financial affairs set forth sufficient grounds for filing suit, particularly where Debtor was given an opportunity to explain any mitigating circumstances prior to the filing of the complaint, but failed to do so. The panel will not adopt a per se rule requiring all plaintiffs to engage in pre-litigation discovery or attend creditors' meetings in order to defeat a request for attorney's fees under section 523(d).

Believing that *Anastas* perhaps changed the evidentiary burdens of creditors in section 523(a)(2) cases, Plaintiff's counsel states that he re-evaluated the underlying adversary proceeding and concluded that Plaintiff could no longer carry its burden without the benefit of certain inferences criticized by the *Anastas* court. The bankruptcy court disagreed, stating that *Anastas* did not change the legal position of this Circuit. The bankruptcy court then concluded that *Anastas* was irrelevant and that the complaint was not justified under the cases decided before *Anastas*.

The bankruptcy court's conclusions appear to be incorrect. Before *Anastas*, some courts (including the lower courts in *Anastas*) gave considerable weight to the fifth *Dougherty* factor: the financial condition of the debtor at the time the charges were incurred. For example, the Bankruptcy Appellate Panel held in *Eashai v. Citibank (In re Eashai)*, 167 B.R. 181 (9th Cir. BAP 1994), *aff'd*, 87 F.3d 1082 (9th Cir.1996), that use of a credit card without a reasonable prospect of an ability to repay the debt or to meet the contract terms is circumstantial evidence from which a bankruptcy court could infer intent. *Eashai*, 167 B.R. at 185. This statement indicates that courts and creditors did tend to give great weight to the fifth *Dougherty* factor when evaluating whether a debtor lacked an intent to repay. *Anastas* does appear to preclude similar analyses in future cases.

In *Anastas*, the bankruptcy court, in determining whether the debtor had fraudulently represented his intent to repay his credit card debt, "focused almost exclusively on Anastas' financial condition." *Anastas*, 94 F.3d at 1286. The lower court in *Anastas* explained that because the debtor's living expenses exceeded his income, he could not have had any realistic hope of repaying his credit card debt. *Id.* "However, apart from the fact of his financial condition, the record contain[ed] no other persuasive evidence of an intent to defraud [the credit card issuer]." *Id.* Based on Anastas' inability to repay his debts when he incurred the charges at issue, the bankruptcy court (applying the *Dougherty* factors) found an intent to defraud. The

Bankruptcy Appellate Panel affirmed. The Ninth Circuit reversed, stating:

> Thus, the focus should not be on whether the debtor was hopelessly insolvent at the time he made the credit card charges. A person on the verge of bankruptcy may have been brought to that point by a series of unwise financial choices, such as spending beyond his means, and if ability to repay were the focus of the fraud inquiry, too often there would be an unfounded judgment of nondischargeability of credit card debt. Rather, the express focus must be solely on whether the debtor maliciously and in bad faith incurred credit card debt with the intention of petitioning for bankruptcy and avoiding the debt. A finding that a debt is nondischargeable under 523(a)(2)(a) requires a showing of actual or positive fraud, not merely fraud implied by law. [Citations omitted]. While we recognize that a view to the debtor's overall financial condition is a necessary part of inferring whether or not the debtor incurred the debt maliciously and in bad faith, and that the twelve factors we set out in *Eashai* are useful for arriving at a finding of bad faith, the hopeless state of a debtor's financial condition should never become a substitute for an actual finding of bad faith.

*Id.* Before *Anastas* was released, a creditor would have been justified in relying heavily on the fifth *Dougherty* factor in determining whether circumstances existed in a particular case which would warrant the inference of fraudulent intent by a debtor. *See, e.g., Eashai*, 167 B.R. at 185 ("Use of the credit card is attended by an obligation on the part of the cardholder to make bona fide use of it. Such good faith means that he cannot use the credit card with reckless indifference to his actual circumstances. Here, the debtor's circumstances were such that the court could infer, as it did, that he could not have reasonably expected to repay the debt.").

In the case before the panel, Plaintiff alleged Debtor's lack of intent or ability to repay when asserting a fraud cause of action under section 523(a)(2). Had the court given great weight to the fifth *Dougherty* factor, the facts of this case might have supported

an inference of fraud, especially where at least five other factors could have been decided in Plaintiff's favor. Once *Anastas* was issued, the burden for creditors to demonstrate intent to defraud appeared to increase. Accordingly, Plaintiff's justification for dismissing the adversary proceeding (albeit only two weeks prior to the trial and two months after release of the *Anastas* decision) seems reasonable.

### D. *Conclusion*

In light of all the information contained in the documentary evidence and the law existing prior to *Anastas,* it appears that the nondischargeability action had a reasonable basis in fact and law. *Carolan,* 204 B.R. at 987. Consequently, we REVERSE the decision of the bankruptcy court to award Debtor her attorney's fees and costs under section 523(d).

OLLASON, J., dissenting.

The majority is too lenient with AT & T who made false allegations in its complaint, failed to investigate the true facts,[1] forced Debtor to hire an attorney for her defense, and, ultimately, sought and obtained voluntary dismissal of its complaint. The bankruptcy court did not abuse its discretion by awarding attorney's fees under § 523(d) because AT & T's complaint was not substantially justified.

AT & T stated in its opposition to the § 523(d) motion that it dismissed its complaint because it realized that a substantial portion of its argument rested on the fifth *Dougherty* factor—the financial condition of the Debtor at the time the charges were made. *In re Dougherty,* 84 B.R. 653, 657 (9th Cir. BAP 1988). In other words, AT & T decided it could not prove fraudulent intent on the part of Debtor.

AT & T attempts to blame the lack of evidence of fraudulent intent on a purported change in law based on *In re Anastas,* 94 F.3d 1280 (9th Cir.1996), which de-emphasized the focus on the Debtor's inability to pay versus an intent not to repay. The

bankruptcy court saw through this weak excuse, and noted that *Anastas* did not change the law which remained as follows: "[T]he creditor must rely on the twelve factors of *Dougherty* to establish the subjective intent of the debtor through circumstantial evidence." *In re Eashai,* 87 F.3d 1082, 1090 (9th Cir.1996).

The majority states that the bankruptcy court relied too heavily on AT & T's pleading deficiencies rather than undertaking a *Dougherty* analysis. However, the bankruptcy court's substantial compliance analysis was correct.

Section 523(d) was patterned after the Equal Access to Justice Act, 28 U.S.C. § 2412(d)(1)(A). Courts which have reviewed case law under the Act have determined that three criteria establish a creditor's substantial compliance under § 523(d): 1) a reasonable basis in law for the theory it propounds; 2) a reasonable basis in truth for the facts alleged; and 3) a reasonable connection between the facts alleged and the legal theory advanced. *In re Shaw,* 114 B.R. 291, 295 (Bankr.D.Utah 1990); *see also In re Napier,* 205 B.R. 900, 908 (Bankr.N.D.Ill. 1997).

AT & T alleged *inter alia* the following in its complaint:

> 7. As the Defendant continued to make charges on his account, he was aware or should have been aware that he was unable to pay his bills as they became due, was insolvent and did not have the ability or intent to repay the amount owed to Plaintiff.
>
> 8. The Defendant obtained credit extended from the Plaintiff by false pretenses, false representations, or actual fraud, and pursuant to 11 U.S.C. § 523(a)(2)(A) should be denied a discharge of this debt to Plaintiff....

AT & T's complaint met the requirements for # 1, above, because if the facts were as it alleged, a reasonable basis in law existed for the complaint. *Shaw* states how the focus then shifts to # 2:

> AT & T solicited Debtor with $4,000 of preapproved credit.

---

1. The record contains the front page of a copy of the preapproved credit application with which

The focus centers on whether there was a reasonable basis in fact upon which the [creditor] was entitled to rely. The [creditor] must show it was justified in bringing this action without more extensive independent analysis which would have shown its assumptions regarding the facts were erroneous.

*Shaw,* 114 B.R. at 295.

The bankruptcy court correctly found that the facts relied upon by AT & T to prove its allegations were false, *i.e.,* that Debtor charged $4,732.19 after January 25, 1996, etc., or were lacking. Whereas the majority downplays Debtor's alternate motion for sanctions pursuant to Federal Rule of Bankruptcy Procedure 9011, *Shaw* points out the close relationship of this rule to the § 523(d) analysis:

> Guidance regarding the extent of factual investigation required of the [creditor] under section 523(d) can be gained from cases reviewing an attorney's failure to independently verify facts in the context of a Rule 11 violation. Rule 11 requires the signer to have read the paper and, after reasonable inquiry, believe it to be well grounded in fact. Rule 11 and section 523(d) have similar language and a similar purpose relative to the necessity for factual investigation on the part of the signor or plaintiff.

*Id. See also In re Grayson,* 199 B.R. 397, 401–02 (Bankr.W.D.Mo.1996).

The bankruptcy court found:

> No investigation was made by AT & T prior to the filing of the complaint. The complaint makes false allegations based on AT & T's own credit card billing statements. The reason given for dismissal of the complaint that the Ninth Circuit law has changed is a weak excuse. The bottom line is that AT & T now confesses it had no basis in fact or law to file the nondischargeability complaint, and when trial approached, with no discovery conducted, AT & T sought voluntary dismissal.

*In re Duplante,* 204 B.R. 49, 52 (Bankr. S.D.Cal.1996).

AT & T acknowledged by seeking voluntary dismissal that the "nexus between the law and fact" was missing. *Shaw,* 114 B.R. at 296. If AT & T had performed the proper inquiry, it would have discovered that the facts did not support its allegations before it filed the complaint. AT & T failed to make any other allegations concerning other *Dougherty* factors. *See Grayson,* 199 B.R. at 402–03.

In addition, the bankruptcy court did a *Dougherty* analysis, without calling it that, based on the evidence before it. It examined Debtor's account activity in the months prior to bankruptcy, finding that Debtor made significant payments in 1995, that Debtor made no charges after November 1, 1995, and that the last activity was a small payment rather than a charge. It also found that Debtor never exceeded her credit limit.[2] *Duplante,* 204 B.R. at 52. These factual findings were not clearly erroneous. These findings together with the findings that AT & T made false allegations and failed to investigate the grounds for its complaint were sufficient to justify the bankruptcy court's use of its discretion in awarding the § 523(d) sanctions.

The majority holds that the bankruptcy court's findings are irrelevant when a review of the entire record reveals facts that would support at least six *Dougherty* factors in favor of AT & T at the time the complaint was filed, citing *In re Carolan,* 204 B.R. 980, 987–88 (9th Cir. BAP 1996). In *Carolan,* the bankruptcy court conducted a trial on the merits and determined that the debt was dischargeable because several *Dougherty* factors weighed in favor of the debtor. The bankruptcy court also found that the complaint was not substantially justified, apparently based on the same evidence. The BAP affirmed the order of dischargeability, but reversed the sanctions. The BAP held that

---

**2.** While the majority points out that the statement for 9/23/95—10/22/95 states that Debtor exceeded her credit limit by $192.15, the next month's statement indicates that Debtor's credit limit was increased from $4,000 to $5,000. In addition, the 10/23/95—11/22/95 statement shows that Debtor made the minimum payment for the month before which included the overlimit fee. This fact was disputed and was resolved in Debtor's favor.

although the bankruptcy court found a significant number of *Dougherty* factors in favor of Debtor, the BAP's review of the entire record showed facts that would justify a complaint, including: 1) a substantial amount of charges were incurred over a 10–day period; 2) some of the purchases were for arguably luxury items; and 3) at the time of the purchases, the debtor's monthly expenses exceeded or nearly exceeded his income. *Carolan* stands for the proposition that the bankruptcy court's determination of substantial justification must be supported by the entire record. *See Carolan*, 204 B.R. at 988.

Similar facts exist in this case where the Debtor's expenses exceeded her income at the time of the purchases, and 56 purchases totaling over $5,000 were made within an approximate 40–day period, which was just a few months before her bankruptcy filing. The totality of circumstances is different from *Carolan*, however. Here, findings were made that Debtor made a $4,070.61 payment in June of 1995, approximately nine months before filing bankruptcy. Two additional payments were made, whereas in *Carolan* there was no finding that any payments were made recently before the bankruptcy.

Other facts of this case distinguish it from *Carolan*. The adversary proceeding did not go to trial on the merits of the complaint. AT & T conceded that it did not have sufficient evidence of fraudulent intent by voluntarily seeking dismissal of the complaint. This was a factor (but not a presumption) also considered by the bankruptcy court in the totality of the circumstances.

Unlike *Carolan*, AT & T based its complaint partly on false allegations, and did not conduct a reasonable investigation in the bankruptcy proceedings to discover the true facts.

Furthermore, the BAP in *Carolan* reviewed the entire trial record. It is questionable that a full-blown *Dougherty* analysis by the bankruptcy court was necessary for a § 523(d) hearing under the circumstances in this case, or that the reviewing Panel appropriately performed such a factual analysis.

AT & T had succeeded in initiating a meritless action. Section 523(d) was intended to discourage creditors from such conduct typically used to obtain a settlement from a honest debtor anxious to save attorney's fees.[3] *Carolan*, 204 B.R. at 987 (citing *In re Itule*, 114 B.R. 206, 213 (9th Cir. BAP 1990)). I would be inclined, in addition to affirming the bankruptcy court's award of § 523(d) sanctions against AT & T, to award sanctions for a frivolous appeal.

---

3. In addition, unlike *Carolan*, the record here indicated that AT & T may have tried to pressure Debtor into reaffirming the debt as a means of settling the imminent nondischargeability litigation. Debtor's declaration averred that AT & T sent her a letter advising her to settle potential litigation by reaffirming the credit card debt. The May 31, 1996 letter is in the record, but Debtor's counsel did not introduce Debtor's testimony at the hearing, so no factual finding was made concerning this matter. *See Duplante*, 204 B.R. at 50.